UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| K. F., by and through her next friends, GREG and BELINDA FELIX, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 4:07CV01691 ERW |
| FRANCIS HOWELL R-III SCHOOL DISTRICT, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Francis Howell R-III School District's Motion to Dismiss Plaintiffs' Complaint [doc. #8].

**I. FACTUAL BACKGROUND**

Plaintiff K.F. is the eight-year-old autistic child of Plaintiffs Greg and Belinda Felix (collectively "Plaintiffs"). Plaintiff K.F. has been a student in Defendant Francis Howell R-III School District since January of 2002 ("Defendant"). Defendant is a public school in St. Charles County, Missouri. During the 2004-2005 and 2005-2006 school years, Defendant provided educational services for Plaintiff K.F. within its Intensive Intervention Classroom program for autistic students, at Castlio Elementary School. Plaintiff K.F.'s placement in the Intensive Intervention Classroom was pursuant to her Individual Education Program (IEP).[1] On each

---

[1] An IEP is a comprehensive written statement required by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq*. The IEP is developed jointly by the child's parents and the school district and outlines the child's special educational needs, as well as specifically designed instruction and services to be provided by the school system to meet those needs. This includes individual identification, evaluation, educational placement, and free and

1

Wednesday that school was in session, during the two relevant school years, Plaintiff K.F., as a disabled student, was dismissed from school three hours earlier than non-disabled students attending Castlio. According to Plaintiffs, this resulted in the loss of over 200 hours of educational services to Plaintiff K.F. Plaintiffs also allege that this necessitated Plaintiffs Greg and Belinda Felix taking time off from their employment to care for Plaintiff K.F.'s needs during those hours.

## II. PROCEDURAL HISTORY

On January 17, 2006, Plaintiffs filed a complaint against Defendant with the United States Department of Education, Office of Civil Rights ("OCR"). In the complaint, Plaintiffs alleged that Plaintiff K.F. was denied the same educational opportunities afforded students without disabilities, in violation of her rights under Section 504 of the Rehabilitation Act of 1973 ("Section 504") as well as Title II of the Americans with Disabilities Act of 1990 ("ADA"). The OCR concluded that there was sufficient evidence to support a finding that Defendant had failed to comply with the requirements of Section 504, due to the shortened school day for disabled students. On July 13, 2006 Defendant entered into a Resolution Agreement with OCR to attempt to resolve their failure to comply with Section 504.

On October 9, 2007, Plaintiffs filed this suit alleging three counts. Under Count I, Plaintiffs allege that Plaintiff K.F., being a disabled student, was denied over 200 hours of educational services in violation of her rights under Section 504 and the ADA. Plaintiffs allege damages from the loss of educational services and seek compensatory education, monetary damages, and attorney's fees. Under Count II, Plaintiffs allege that Defendant has not complied with the Resolution Agreement that it signed with the OCR. Plaintiffs state that this is a violation

---

appropriate education decisions.

of Plaintiff K.F.'s rights under Section 504 and the ADA. Plaintiffs seek the same relief detailed under Count I. Under Count III, Plaintiffs Greg and Belinda allege that they were damaged by the violation of Plaintiff K.F.'s rights under Section 504 and the ADA. Plaintiffs seek monetary damages to compensate them for financial losses they incurred as well as attorney's fees. Defendant moves to dismiss Plaintiffs' Complaint for failure to exhaust administrative remedies and for failure to state a claim. The Court will now address Defendant's pending motion.

**III. LEGAL STANDARD**

A complaint shall not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support" of a claim entitling him or her to relief. *Breedlove v. Earthgrains Baking*, 140 F.3d 797, 799 (8th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In an order on a motion to dismiss, the court must assume that all allegations in the complaint are true and construe all reasonable inferences in the plaintiff's favor. *Hafley v. Lohman*, 90 F.3d 264, 267 (8th Cir. 1996) (citing *McCormack v. Citibank*, N.A., 979 F.2d 643, 646 (8th Cir. 1992)). The complaint "should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. However, a complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

"While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he basis his claim,' Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 n.3 (2007) (citing *Conley*, 355 U.S. at 47) (emphasis added by

3

*Bell Atlantic Corp.*).[2] "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alterations in original)). Furthermore, "[t]he Court need not accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if they are couched as factual allegations." *Davis v. Bemiston-Carondelet Corp.*, 2005 WL 2452540, at *5 (E.D. Mo. Oct. 4, 2005) (citing *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 127 S.Ct. at 1965.

A complaint may also be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Before the court may reach the merits of the complaint, it must satisfy itself that it has jurisdiction over the subject matter of the case. *Bell v. Hood*, 327 U.S. 678, 682 (1946); *see also Int'l Ass'n of Fire Fighters v. City of Clayton*, 320 F.3d 849, 850 (8th Cir. 2003) ("The federal courts are under an independent obligation to examine their own jurisdiction." (internal citation omitted)). Under Federal Rule of Civil Procedure 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). The court may dismiss an action *sua sponte* at any time when subject matter jurisdiction is lacking. *Int'l Ass'n of Fire Fighters*, 320 F.3d at 850 (the Eighth Circuit, on its own initiative, dismissed the action for lack of jurisdiction). Failure to exhaust administrative remedies is properly treated as a lack of

---

[2]A debate among scholars continues, as to whether *Bell*'s application is limited to the anti-trust context, however, *Bell* "retired" *Conley*, in part, so the Court proceeds with the view that *Bell* applies beyond anti-trust cases.

subject matter jurisdiction pursuant to Rule 12(b)(1).[3] *See M.P. v. Indep. Sch. Dist. No. 721,* 439 F.3d 865, 868 (8th Cir. 2006).

The issue then is the Court's "very power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)). When determining whether subject matter jurisdiction exists, the district court may consider matters outside of the pleadings. *Deuser v. Vecera*, 139 F.3d 1190, 1192 n.3 (8th Cir. 1998) ("The district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).'" (quoting *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993))).

## IV. DISCUSSION

Here, a dispute arises over the applicability of the IDEA to Plaintiffs' claims. If Plaintiffs' claims fall under the IDEA, as asserted by Defendant, then exhaustion of administrative remedies is required to establish subject matter jurisdiction. If the IDEA does not control Plaintiffs' claims, then they need not plead, nor pursue, administrative exhaustion to seek civil redress in this Court on other claims. Defendant also challenges the sufficiency of Count II to state a claim, and assert that Plaintiffs lack standing to bring Count III. On these grounds, Defendant seeks judgment in

---

[3] The Defendant correctly observes that "[c]ourts disagree whether failure to exhaust administrative remedies is an issue of subject matter jurisdiction or an affirmative defense." *See Dohmen v. Twin Rivers Pub. Schls.,* 207 F. Supp. 2d 972, 989-990 (D. Neb. 2002). The Court believes that in the Eighth Circuit the matter is properly treated as one of subject matter jurisdiction. *See, e.g. A.C. v. Indep. Schl. Dist. No. 152,* 2006 WL 3227768 at *2 (D. Minn., Nov. 7, 2006) ("In general, a court lacks subject matter jurisdiction to hear an IDEA dispute unless a plaintiff exhausted all available state administrative review procedures prior to filing suit."); *see also Larson v. Int'l Falls Pub. Sch.,* 2002 WL 31105199 at *3 (D. Minn. Sept. 11, 2002) (addressing IDEA administrative exhaustion under the discussion heading of subject matter jurisdiction).

their favor on all three Counts of Plaintiffs' Complaint. The Court will address each Count in turn.

**A. COUNT I**

Under Count I, Plaintiffs allege that Plaintiff K.F., being a disabled student, was denied over 200 hours of educational services in violation of her rights under Section 504 and the ADA. Plaintiffs allege damages from the loss of educational services, and seek compensatory education, monetary damages, and attorney's fees. The Defendant contends that this is actually a claim under the IDEA and that Plaintiffs are therefore required to exhaust their administrative remedies before pursuing a civil action.[4] Plaintiffs respond that their claims are wholly unrelated to the IEP process and they have no duty to exhaust administrative remedies.

The IDEA was enacted to ensure that all children with disabilities have access to a free and appropriate public education ("FAPE"). 20 U.S.C. § 1400(d). Generally when a plaintiff brings a claim under the ADA or Section 504, the IDEA exhaustion requirement applies to the extent that those claims seek relief that is also available under the IDEA. *See* 20 U.S.C. § 1415(l).[5] There are three recognized exceptions to the exhaustion requirement. Exhaustion is not

---

[4]Under Count I, Defendant does not suggest that Plaintiffs have failed to allege facts that would support a claim for relief under Section 504 or the ADA. The only basis for Defendant's motion to dismiss Count I is the exhaustion requirement of the IDEA. Therefore, the Court will not discuss, in detail, the elements of a claim under the cited statutes at this stage of the proceedings.

[5]1415(l) states as follows:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. 12101 et seq.], title V of the Rehabilitation Act of 1972 [29 U.S.C.A. 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the

required where "(1) exhaustion would be futile; (2) exhaustion would fail to provide adequate relief; or (3) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law." *A.C.,* 2006 WL 3227768 at *2, citing *Megan C. V. Indep. Sch. Dist. No. 625,* 57 F. Supp.2d 776, 789 (D. Minn. 1999). Under the third exception, exhaustion will not be required if the relief sought is "wholly unrelated to the IEP process." *M.P.,* 439 F.3d at 868.

Plaintiffs claim falls under the third recognized exception to the exhaustion requirement articulated above; it is a policy of general applicability that is contrary to the law. *A.C.,* 2006 WL 3227768 at *2 ("[A]n agency has adopted a policy or pursued a practice of general applicability that is contrary to the law"). As stated by the Eighth Circuit in *M.P.*, the question to be determined is whether the claim is wholly unrelated to the IEP process. 439 F.3d at 868. The Eighth Circuit, in *M.P.*, cited to a number of examples of cases which involved decisions that met this standard. *Id.* at 867 ("Examples of successful Section 504 claims include a blanket district-wide policy that shortened the school day for autistic children" (citing *Christopher S. v. Stanislaus County Office of Education*, 384 F.3d 1205, 1211-12 (9th Cir. 2004))). In *Christopher S.*, the Ninth Circuit was faced with a school district that dismissed all of its autistic students at noon every Tuesday, several hours earlier than they dismissed non-disabled students. 384 F.3d at 1207. The court in *Christopher S.* noted that "[t]he United States Department of Education, Office of Civil Rights ("OCR"), has repeatedly held that a blanket policy of shortened school days for disabled students violates section 504 the Rehabilitation Act and the ADA." *Id.* at

---

action been brought under this subchapter.

20 U.S.C. § 1415(l). Subsection (f) provides for an "impartial due process hearing" and subsection (g) provides for an appeal to the state educational agency "[i]f the hearing required by subsection (f) of this section is conducted by a local education agency." 20 U.S.C. §§ 1415(f) & 1415(g)(1).

1212. The court added that "the practice of providing shortened school days for disabled students constituted an administrative policy separate from the IEP process." *Id*.

Defendant argues that Plaintiffs' reliance on *Christopher S.* is misplaced; Defendant suggests that Plaintiffs, in challenging the shortened day, are not challenging a blanket, administrative policy, but are instead challenging Plaintiff K.F.'s placement in the Castlio program which was a result of her IEP. Defendant argues that this is not an across-the-board policy because placement options were available that did not have a shortened school day. It is true this case can be distinguished from *Christopher S.*, due to the availability of other educational placement options without a shortened day, as opposed to *Christopher S.* where the policy was district wide, not only school wide. *Christopher S.*, 384 F.3d at 1212. However, the court in *Christopher S.* was primarily concerned that the shortened schedule was a "polic[y] that had nothing to do with the content of individual IEPs-no individualized decisions were made on a case by case basis." *Id.* The court concluded that "the pursuit of the IDEA due process remedies [would] not further the general purposes of exhaustion and the congressional intent behind the administrative scheme[,]" because the shortened school day was "not a decision that resulted from any individual student's IEP process." *Id.* (internal citations omitted). Similarly, Defendant's policy of shortened school days, even if limited only to the Castlio program, do not result from any individual IEP, but apply universally to all students placed in the program. The school's policy of a shortened school day for autistic students is exactly the kind of generalized practice the courts in *Christopher S.* and *M.P.*, found to be outside the scope of the administrative process contemplated by the IDEA, and is the type of claim that can be redressed by this Court through an action under Section 504 and the ADA. *M.P.*, 439 F.3d at 867-868.

The case law requires only individualized case-by-case decisions to be addressed by the IDEA administrative processes. Claims against generally applicable policies, at any level, are not adequately addressed by the IDEA administrative process, and therefore do not require administrative exhaustion. The Court finds that administrative exhaustion was not required in this case. Defendant's Motion to dismiss Count I is denied.

**B. COUNT II**

Under Count II of the complaint, Plaintiffs allege that Defendant has not complied with the Resolution Agreement that it signed with the OCR, and that this provides a separate basis for relief. In Plaintiffs' reply memorandum, they frame this claim as a contract action, that Plaintiff K.F. is the third party beneficiary of the contract entered into between the OCR and the Defendant. Plaintiffs seek the same relief detailed under Count I.

The OCR provides guidelines and procedures for evaluating complaints, investigating complaints, resolving complaints, and finally for taking enforcement action. *OCR Case Resolution and Investigation Manual*, http://www.ed.gov/about/offices/list/ocr/docs/ocrcrm.html. Pursuant to these procedures, a resolution agreement was entered between the OCR and the Defendant, resulting from a complaint made by Plaintiffs. The guidelines further provide provision for the exact circumstance present in this case, "[w]here the recipient has failed to comply with the agreement it is necessary to prepare an LOF [letter of finding] consistent with the procedures outlined under Sections 305 and 306. If a new agreement cannot be reached after issuance of the LOF, procedures set forth in Section 401 and 402 will be followed as appropriate. *Id.* at Article IV, § 404. At no point do the procedures provide for individual civil action by the complainant.

Under a Missouri contract law claim, the plaintiff must allege facts which show: "(1) the existence of an enforceable contract between the parties to the action; (2) mutual obligations arising under its terms; (3) the party being sued failed to perform obligations imposed by the contract; and (4) the party seeking recovery was thereby damaged." *Jackson v. Williams, Robinson, White & Rigler, P.C.*, 230 S.W.3d 345, 348 (Mo. Ct. App. 2007).

There is no doubt that Plaintiffs' have successfully pled a claim for relief under Count I, for the violation of Plaintiff K.F.'s rights under Section 504 and the ADA.[6] However, the Court can find no authority in support of the assertion that the Defendant's violation of an OCR Resolution Agreement provides Plaintiffs with a basis for relief, either under Section 504 and the ADA, or under a common law contract theory. The OCR guidelines do not provide for enforcement through a civil court action, and therefore cannot support a cause of action under Count II of Plaintiffs' complaint. Further analysis under Missouri contract law, further shows that no valid contract existed. The first requirement is that Plaintiffs must show that there was a valid enforceable contract between the parties to the action. *Jackson*, 230 S.W.3d at 348. Neither Plaintiff K.F., nor her parents, were a party to the agreement that forms the basis of their claim

---

[6]To successfully plead a violation of Section 504 Plaintiffs must allege facts that show Plaintiff K.F. "(1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability." *Timothy H. v. Cedar Rapids Cnty. Sch. Dist.,* 178 F.3d 968, 971 (8th Cir. 1999). Plaintiffs have alleged that Plaintiff K.F. suffers from autism, was denied the benefit of a full length school day from a public school receiving federal funds, and that the reason she was denied this benefit was because she suffered from autism. Therefore, Plaintiffs clearly have stated a claim for relief under Section 504 of the Rehabilitation Act. Similarly, Plaintiffs have stated a claim for relief under the ADA. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity . . . ." 42 U.S.C. § 12132. The Court concludes that the same facts alleged in support of a claim under the Rehabilitation Act, also support a claim under the ADA. *See e.g. Lewis v. Johannas*, 180 Fed.Appx. 599, (8th Cir. 2006) ("[C]ases interpreting the ADA and the Rehabilitation Act are interchangeable because the same basic standards and definitions are used under the ADA and the Rehabilitation Act . . . .").

10

under Count II, however, Plaintiff K.F. could qualify as a third party beneficiary to the agreement. "To be a third party beneficiary, 'the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member.'" *HSBC Auto Finance Inc. v. Lyles*, 240 S.W.3d 736, 738 (Mo. Ct. App. 2007). The OCR resolution agreement was intended to benefit students in the Defendant school district that were subject to a shortened school day because of their placement in the Castlio program. Therefore, Plaintiff K.F. would be a member of the class of persons the contract identified as the intended beneficiary, satisfying the first requirement articulated by the Missouri Court of Appeals. However, the second requirement for a contract action is not met. *Jackson*, 230 S.W.3d at 348. A valid contract requires mutual obligations. *Id.* The agreement required the Defendant school district to come into compliance with federal law. There was no requirement on the part of the OCR. Therefore an enforceable contract was not created between the OCR and the Defendant.[7]

Plaintiffs have not pled a cause of action under Count II. The OCR resolution agreement does not provide for enforcement through civil action, and Plaintiffs are unable to allege facts to support a contract claim under Missouri law. The resolution agreement required action on the part of the Defendant, but did not place a mutual obligation on the OCR. Therefore, Plaintiffs' claims under Count II are dismissed.

**C. COUNT III**

In Count III, Plaintiffs allege that Plaintiffs Greg and Belinda were damaged by the violation of Plaintiff K. F.'s rights under Section 504 and the ADA. Plaintiffs seek monetary

---

[7]The Court notes that Plaintiffs' allegations are sufficient to satisfy the third and fourth requirements for a contract action. *See Jackson*, 230 S.W.3d at 348. The Defendant failed to abide by its obligations under the resolution agreement, and the party seeking enforcement, Plaintiff K.F., was harmed as a result, namely she received less educational time than the agreement required.

11

damages to compensate them for financial losses they incurred as well as attorney's fees. Defendant argues that Plaintiffs Greg and Belinda do not have standing under Section 504 or the ADA.

Standing has both constitutional and prudential dimensions. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (holding that standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise"); *see also Starr v. Mandanici*, 152 F.3d 741, 749 (8th Cir. 1998). Article III of the United States Constitution limits the subject-matter jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art. III, § 2. A plaintiff must demonstrate "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, . . . and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Miller v. Block*, 771 F.2d 347, 352 (8th Cir. 1985) (internal quotations omitted).

"The second category of self-imposed standing limitations are prudential principles which underscore the limitations embodied in Article III." *Miller*, 771 F.2d at 352. "The prudential principles of standing ensure that federal courts are not called upon to decide questions of broad social import in cases in which no individual rights will be vindicated, and [that] access to the federal courts [is] limited to those litigants best suited to assert the claims." *Starr*, 152 F.3d at 749 (internal quotations omitted). The prudential limitation applicable to the present case is the principle that "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 498-499; *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001) (internal quotations omitted); *see also Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005).

Plaintiffs Greg and Belinda have clearly suffered an injury, the expense of caring for Plaintiff K.F. for an additional three hours per week, as a result of the allegedly illegal conduct by Defendants. *Miller v. Block*, 771 F.2d at 352. Therefore, Plaintiffs Greg and Belinda have satisfied the constitutional standing requirements. Defendants argue that Plaintiffs Greg and Belinda have failed to satisfy the prudential standing requirement that a plaintiff assert their own legal rights, and not the legal rights of a third party, in this case Plaintiff K.F.

The Supreme Court recently held, in *Winkelman v. Parma City Schl. Dist.*, that parents had independent and enforceable rights under the IDEA. 127 S. Ct. 1994, 2004 (2007). The Supreme Court specifically emphasized the language in the IDEA that acknowledges parents involvement in the educational decisions of their disabled children, and the language which protected those rights through the administrative review process and eventually through the judicial system. *Id.* at 2000-2002. The Ninth Circuit expanded the *Winkelman* decision to cover claims under Section 504 and the ADA. *Blanchard v. Morton Sch. Dist.,* 509 F.3d 934 (9th Cir. 2007). The Ninth Circuit recognized a mother as "a proper plaintiff [under Section 504 and the ADA] at least insofar as she is asserting and enforcing the rights of her son and incurring expenses for his benefit." *Id.* at 938. In reaching this conclusion, the Ninth Circuit quoted *Winkelman* concerning the "particular and personal" interest parents have in preventing discrimination against their child. *Id.* The same conclusion has been reached by the Pennsylvania District Court, which found that parents have their own standing under Section 504 and the ADA. *C.J.G. v. Scranton Sch. Dist.,* 2007 WL 4269816 at *5-6 (M.D.Pa. Dec. 3, 2007). The Pennsylvania court decision is instructive, as it compares the language in Section 504 of the Rehabilitation Act with language found significant by the Supreme Court in *Winkelman*. *C.J.G.*, 2007 Wl 4269816, at *5. "Similarly, Section 504 of the Rehabilitation Act permits 'a party aggrieved' to recover for

13

violations. 'The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.'" *Id.* at *5 (quoting 29 U.S.C. § 794(a)(2)). The Pennsylvania Court concluded that, "the parent Plaintiffs in this case have standing to bring claims for their own injuries in their own right pursuant to Section 504." *Id.* at *5. The court added later that, "[a]s the parents have been afforded standing pursuant to the Rehabilitation Act, the parents will also be afforded standing pursuant to the ADA for the same reasons." *Id.* at *6.

This Court is persuaded by the reasoning in *Blanchard* and *C.J.G.*, and finds that parents do have standing under Section 504 and the ADA as an aggrieved party in their own right. The Supreme Court clearly emphasized the importance of parents in the educational role of their children. *Winkelman*, 127 S.Ct. at 2005 ("Parents may seek to enforce this mandate through the federal courts, we conclude, becasue among the rights they enjoy is the right to a free and public education for their child."). While Plaintiffs Greg and Belinda do not raise a claim under the IDEA, their claims nonetheless involve the right of their child to a free and appropriate public education, and therefore are entitled to bring suit in their own right as an aggrieved party. Defendant's Motion to Dismiss Count III is denied.

## V. CONCLUSION

Defendant seeks to dismiss the present action, by asserting that the Plaintiffs have failed to exhaust their administrative remedies, as required under the IDEA, and for failure to state a claim on which relief can be granted. Under Count I, Plaintiffs are challenging a policy of general applicability, and therefore IDEA exhaustion is not required. Defendant's motion to dismiss Count I is denied. In addition, Plaintiffs Greg and Belinda Felix, in light of the Supreme Court's

14

reasoning in *Winkelman,* may be "a party aggrieved" and do have standing under Section 504 and the ADA. *Winkelman,* 127 S.Ct. 2004. Defendant's motion to dismiss Count III is also denied. However, Plaintiffs have failed to state a recognized claim for relief in Count II and therefore Defendant's motion to dismiss Count II is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [doc. # 8] is **GRANTED, in part, and DENIED, in part**. It is **GRANTED** as to Count II. It is **DENIED** as to Counts I and III.

Dated this 17th Day of March, 2008.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE